IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


STEPHEN J. TAMBURO, III,

                        Plaintiff,

v.                                        CIVIL ACTION NO.   2:13-cv-01537

SCOTT HALL, et al.,

                        Defendants.


**MEMORANDUM OPINION AND ORDER**


Pending before the Court is Defendants' Motion to Dismiss Amended Complaint (the "Motion to Dismiss"). (ECF 42.) For the reasons discussed herein, the Motion to Dismiss is granted in part, and denied in part.

## I.     *Background*

This action involves claims by a former inmate of Mount Olive Correctional Center ("MOCC") against individual employees and officials of the West Virginia Department of Corrections ("WVDOC"). (ECF 37 (First Amended Complaint) ¶ 2.) "Plaintiff . . . was an individual committed to the custody of the West Virginia Division of Corrections, and was incarcerated at MOCC." (*Id.* ¶ 5.) "Plaintiff is an openly homosexual individual possessing an effeminate manner," which Plaintiff alleges "Defendants were aware." (*Id.* ¶ 6.)

1

A prison gang known as "Wolfhammer 88" or "Hammer Skins" operates at MOCC and follows "Arian principles," including "openly despis[ing] homosexuals and other minority groups." (*Id.* ¶ 7.) Plaintiff alleges that this gang "operates openly and notoriously at MOCC." (*Id.*)

Plaintiff alleges that Defendants were aware of this gang, its principles, and that it openly was hostile to these groups, and that this awareness "was obtained by numerous means, including but not limited by [sic] the creation and publication of a manifesto by Inmate Michael Conner . . . who upon information and belief, is the gang's leader." (*Id.*) Plaintiff further alleges, "upon information and belief," that "Defendants and other MOCC officials" allowed this gang to operate with virtual impunity," and that "the gang and its members receive preferential treatment at MOCC." (*Id.* ¶ 9.)

"Shortly after his incarceration at MOCC, the Plaintiff was informed by his cell mate, Inmate Nick Layne . . . that the gang was specifically targeting homosexuals such as the Plaintiff for attack." (*Id.* ¶ 10.) Plaintiff does not allege that he informed Defendants of this perceived threat. (*See id.*) Rather, Plaintiff alleges, "upon information and belief," that "Defendants were actually and/or constructively aware" that the gang was targeting homosexuals. (*Id.*)

"On April 25, 2012, the Plaintiff proceeded to the pill line in the general population unit at MOCC." (*Id.* ¶ 11.) Plaintiff was then "attacked by fellow inmate Jake Samples . . . from behind, struck about the head and other parts of his body, and knocked unconscious." (*Id.*) "Witnesses describe that [Conner], while observing the attack personally, shouted and implored [Samples] to 'break the faggot's neck.'" (*Id.* ¶ 12.) Plaintiff alleges, "upon information and belief," that Mr. Samples "is a member of and/or was associated with the gang," "the attack of the Plaintiff was ordered and directed by I/M Samples [sic]," "Defendants were aware [Conner] ordered the attack,"

and "MOCC correctional officers, including but not limited to Defendant Hall, that were assigned to monitor the scene of the attack were not properly occupying their assigned posts at the time." (*Id.* ¶¶ 11–13.) "The Plaintiff was initially treated at MOCC for serious physical injuries suffered in the attack, and was subsequently transferred to Montgomery General Hospital for treatment of the same injuries." (*Id.* ¶ 14.)

"Plaintiff was thereafter officially charged with a disciplinary violation for fighting" and "convicted of this charge by Defendant Greenwood." (*Id.* ¶ 15.) Plaintiff was then "assigned fifteen days of punitive segregation, and not assigned to any form of protective custody." (*Id.*) Samples was also "charged with and convicted of assault" and assigned "fifty-nine (59) days of punitive segregation." (*Id.* ¶¶ 15–16.) "After 'investigating' the attack, MOCC Investigator and instant Defendant Frame" found "that the attack was motivated by the sunglasses that the Plaintiff had worn" and was not "related to the Plaintiff's homosexuality." (*Id.* ¶ 18.)

Following the April 25, 2012 incident, "Plaintiff followed administrative procedures and requested a transfer of custody," as he perceived that his life was "in imminent danger." (*Id.* ¶ 19.) Plaintiff states that he provided the following on the transfer request form: "I am requesting that I be transferred to Northern Correctional Complex, a facility more committed to accommodate the safety to myself [sic], an openly gay inmate." (*Id.* ¶ 20.) Officials, "including but not limited to . . . Defendants Ballard and Rubenstein" did not respond to Plaintiff's transfer request "for an unreasonable amount of time." (*Id.* ¶ 19.)

"Plaintiff's mother made several attempts to further inform the Defendants and other WVDOC officials" of the perceived ongoing threat to Plaintiff's "life and safety," including by sending "a number of letters to Defendant Rubenstein." (*Id.* ¶ 20.) Defendant Rubenstein

responded to Plaintiff's mother by "claiming that the Plaintiff's request to be transferred was only motivated by his desire to rejoin his previous cell mate, [Layne]." (*Id.*)

Subsequent to the April 25, 2012 incident, "Conner was found in possession of several knives and/or similar weapons," but "was allowed to remain in the mainline MOCC population for a period of approximately two weeks." (*Id.* ¶ 21.) "On May 29, 2012, while Plaintiff was again proceeding to the pill line at MOCC, [Conner] purposefully and physically bumped into the Plaintiff and commented: 'What's the matter sissy, no bodyguard?'" (*Id.* ¶ 22.) Following this incident and "the continued efforts of his mother," Plaintiff was "transferred to the West Virginia Northern Correctional Facility." (*Id.* ¶ 23.)

Plaintiff filed the instant suit *pro se* on January 28, 2013. (ECF 3.) On February 18, 2014, Sean Cook and Sarah Rogers filed notices of attorney appearance on behalf of Plaintiff. (ECF 32 & 33.) Plaintiff filed a motion to amend the complaint on March 5, 2014, (ECF 36), and filed the Proposed First Amended Complaint on March 11, 2014, (ECF 37). By its Order, dated March 13, 2014, the Court granted Plaintiff's motion to amend the complaint. (ECF 38.)

On May 20, 2014, attorney Sarah Rogers filed a motion to withdraw as counsel for Plaintiff, in which she noted that "[c]o-counsel, Sean Cook, will remain lead counsel in this matter and will continue to provide representation on behalf of the firm." (ECF 39.) By its Order, dated July 7, 2014, the Court granted Ms. Rogers' motion to withdraw and noted that Ms. Rogers "represents that her co-counsel, Sean Cook, will remain as lead counsel in the case." (ECF 40.)

The operative First Amended Complaint includes three counts for deprivation of constitutional rights under 42 U.S.C. § 1983 against all Defendants[1] and one count of negligent

---

[1] While Plaintiff does not state the statutory basis for his constitutional rights claims, the Court construes them as civil

4

supervision and training against Defendants Rubenstein and Ballard. (ECF 37.) On July 31, 2014, Defendants filed the Motion to Dismiss, in which they seek dismissal of the First Amended Complaint based on two arguments: (1) Plaintiff failed to properly serve the Amended Complaint on Defendants; and (2) the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted. (ECF 43.) To date, Plaintiff has not filed an opposition to the Motion to Dismiss.[2]

## II.    Failure to Effectuate Service

Defendants first move to dismiss the First Amended Complaint due to Plaintiff's purported failure to effectuate service of this complaint. (ECF 43 at 8–9.)

"A motion under Rule 12(b)(5) is the appropriate means for challenging the manner or sufficiency of service of process." *Plant Genetic Sys., N.V. v. Ciba Seeds*, 933 F. Supp. 519, 526 (M.D.N.C. 1996) (citation omitted). "[T]he primary purpose of service of process is to give a defendant legal notice of the claims asserted against him so that he may prepare his defense." *Health Care Indem., Inc. v. King*, Civil Action No. 2:05-0913, 2006 WL 3342203, at *10 (S.D. W. Va. Sept. 25, 2006) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)).

---

rights claims under 42 U.S.C. § 1983. *See, e.g.*, *Poe v. Town of Gilbert, W. Va.*, Civil Action No. 2:11–cv–00645, 2012 WL 3853200, at *3–4 (S.D. W. Va. Sept. 5, 2012) (construing civil claims that assert violations of constitutional rights as Section 1983 claims).

[2] "Where a plaintiff fails to respond to a motion to dismiss within the time period set forth by the applicable procedural rules, a court may rule on the motion to dismiss 'on the uncontroverted bases asserted therein.'" *Hager v. Star Transp., Inc.*, Civil Action No. 2:11–cv–00618, 2012 WL 3139465, at *1 (S.D. W. Va. Aug. 1, 2012) (citing *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004). Although the Court decides these issues on their merits, "[a] number of federal courts have declared that a motion to dismiss may be properly granted without reaching the merits, based on the theory that (i) plaintiff's failure to respond operates as a concession that the motion should be granted, or (ii) dismissal is appropriate as a sanction for failure to prosecute or to obey the court's orders." *Anderson v. Greene*, No. Vic. 05-0393-WS-M, 2005 WL 1971116, at *2 (S.D. Ala. Aug. 16, 2005) (citing *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294–95 (D.C. Cir. 2004), *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004), and *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)).

An amended complaint that does not include new parties is a "pleading filed after the original complaint" and, as such, the plaintiff must serve the amended complaint on all parties in accordance with Federal Rule of Civil Procedure 5. *See Lerose v. United States*, Civil Action No. 2:03-2372, 2006 WL 5925722, at *1 n.1 (S.D. W. Va. May 17, 2006); Fed. R. Civ. P. 5(a)(1)(B). "If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Fed. R. Civ. P. 5(b)(1).

Plaintiff filed his Proposed First Amended Complaint on March 11, 2014. (ECF 37.) Plaintiff included a certificate of service with this filing, in which Plaintiff's counsel—Sean Cook—certifies that the document was served on Defendants' counsel. (*Id.* at 11.) As such, Plaintiff complied with Rule 5's service requirements.

Defendants concede that Rule 5's requirements apply to the service of the First Amended Complaint. (ECF 43 at 8.) Nonetheless, Defendants argue that Plaintiff's service of the *Proposed* First Amended Complaint—which became the First Amended Complaint following the Court's March 13, 2014 Order—is insufficient and Plaintiff should have again served this document following the Court's Order. (ECF 43 at 8–9.) Defendants then argue that the Court should apply Rule 4(c)'s 120-day service requirement—even though Defendants previously acknowledged Rule 4's requirements do not apply here—and dismiss this action. (*Id.*)

The Court is not persuaded by Defendants' argument. Defendants were put on notice regarding this action through service of the original complaint. The First Amended Complaint only included claims against the same Defendants and Plaintiff complied with Rule 5's requirements in serving the Proposed First Amended Complaint. (*See* ECF 37.) Defendants' argument amounts to an attempt to dispose of this matter on the basis of, at best, a minor technicality. The Court declines

6

to do so. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993) (noting the Fourth Circuit's "strong policy that cases be decided on their merits").

Accordingly, the Court **DENIES** the Motion to Dismiss insofar as it argues for dismissal based on a failure to effectuate service of process.

### III.    Failure to State a Claim Upon Which Relief Can Be Granted

Defendants next argue the Court should dismiss the First Amended Complaint because Plaintiff fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 43 at 9–20.)

### A.    Legal Standard.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those

allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

In civil rights cases against government officials, the "complaint can survive a motion to dismiss only if it . . . 'alleges the specific conduct violating the plaintiff's right, the time and the place of that conduct, and the identity of the 'responsible officials.'" *Preast v. McGill*, 65 F. Supp. 2d 395, 403 (S.D. W. Va. 1999) (quoting *Colburn v. Upper Darby Twp.*, 838 F. Supp. 2d 663 (3d Cir. 1988)); *cf. Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (noting that *Iqbal* and *Twombly* "require more specificity from complaints in federal civil cases than was [previously] the case").

### B.    Defendants Perry & Kincaid.

As an initial matter, Plaintiff named Paul Perry and William Kincaid as defendants in the First Amended Complaint. However, the Complaint does not include a single allegation regarding these two individuals. (*See* ECF 37.) Indeed, after the case caption, these two individuals are not mentioned again throughout the pleading. This is insufficient to overcome a motion to dismiss as to these two Defendants. *See, e.g.*, *Iqbal*, 556 U.S. at 678.

Accordingly, the Court **GRANTS** the Motion to Dismiss as to Defendants Perry and Kincaid.

### C.    Count I—Violation of Rights Secured by the Eighth Amendment.

Defendants argue the Court should dismiss Count I of the First Amended Complaint,

which asserts a claim for failure to protect "inmates such as Plaintiff" in violation of the Eighth and Fourteenth Amendments to the United States Constitution. (ECF 37 ¶¶ 24–31.)

Plaintiff brings this claim under 42 U.S.C. § 1983. (*See id.*); *see also Poe*, 2012 WL 3853200, at *3–4 (construing civil claims that assert violations of constitutional rights as Section 1983 claims). Section 1983 provides the following:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To maintain a § 1983 action, [the plaintiff] must show that: (1) he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the defendants deprived him of this right while acting under 'color of any [law].'" *Tincher v. Fink*, No. Civ. A. 2:03-0030, 2005 WL 1845319, at *3 (S.D. W. Va. Aug. 2, 2005) (citing *Lugar v. Edmondson Oil Co.*, 922 U.S. 930, 939 (1982)).

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at

834.

A prisoner must establish two elements to sustain a failure-to-protect claim under the Eighth Amendment: (1) "the deprivation alleged must be, objectively, sufficiently serious," that is "the denial of the minimal civilized measure of life's necessities;" and (2) the prison official had a "sufficiently culpable state of mind," which is "one of deliberate indifference to inmate health or safety." *Id.* (internal quotation marks and citations omitted). Under the first prong, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions," *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," *id.* (citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)). To satisfy the second element, the prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (stating that "mere negligence" in failing to protect an inmate does not violate the Eighth Amendment).

In the instant case, Plaintiff does not provide any allegations that specifically describe the injuries he sustained in the April 25, 2012 incident. However, Plaintiff does assert that he was "knocked unconscious" during the fight and the injuries were sufficiently serious to warrant medical treatment both at MOCC and then Montgomery General Hospital. (ECF 37 ¶ 14.) As such, the Court finds that, for purposes of the Rule 12(b)(6) motion, Plaintiff has asserted facts sufficient to satisfy the first element of a failure-to-protect claim. *See, e.g.*, *De'Lonta*, 330 F.3d at 634

10

(quoting *Strickler*, 989 F.2d at 1379).[3]

However, Plaintiff fails to allege facts sufficient to satisfy the "culpable state of mind" requirement. Plaintiff alleges that Defendants were aware of the existence of the prison gang, that the gang "follows Arian principles and openly despises homosexuals and other minority groups, and that it "was specifically targeting homosexuals." (*Id.* ¶¶ 7 & 10.) Plaintiff fails, however, to provide any specific facts supporting these assertions, beyond a general and conclusory assertion that Defendants were aware of a manifesto by one purported gang member. (*See id.* ¶¶ 6–12.) Plaintiff similarly fails to specify which individual Defendants were aware of a particular threat. (*See id.*)

Additionally, Plaintiff fails to provide facts as to how any specific Defendant "disregarded" a risk posed by this gang. Plaintiff asserts that Defendants allowed the gang "to operate with virtual impunity" and "receive preferential treatment," but provides no support for these assertions. (*See id.* ¶ 9.) Similarly, Plaintiff states that, on the day of the attack, officers "assigned to monitor the scene of the attack were not properly occupying their assigned posts at the time." (*Id.* ¶ 13.) Again, Plaintiff fails to provide any support for this assertion, state which officers were "not properly occupying their assigned posts," or indicate how this absence constituted a "disregard" of the risk to Plaintiff's safety. (*See id.*)

Finally, Plaintiff asserts that he sent a letter requesting to be transferred to another prison and his "mother made several attempts to further inform the Defendants and other WVDOC officials of the ongoing threat to his life and safety," but those requests were initially refused. (*Id.* ¶ 20.) However, Plaintiff fails to state which Defendant received his letter, that the recipient was

---

[3] Defendant does not argue that Plaintiff's injuries fail to satisfy the "deprivation" element of a failure-to-protect claim. (*See* ECF 43 at 12–14.)

aware of an "excessive risk" to Plaintiff's safety due to the contents of the letter, or that a specific Defendant disregarded that risk. Plaintiff does identify Defendant Rubenstein as the recipient of his mother's letters, but Plaintiff fails to allege the specific contents of those letters, that Defendant Rubenstein was aware of the facts "from which the inference could be drawn that a substantial risk of serious harm" existed, or that Defendant Rubenstein actually drew that inference. (*See id.* ¶ 20); *see also Farmer*, 511 U.S. at 837 (describing the "deliberate indifference" requirement of a failure-to-protect claim). These allegations are insufficient to overcome a motion to dismiss. *See Farmer*, 511 U.S. at 837.

Accordingly, the Court **GRANTS** the Motion to Dismiss as to Count I of the First Amended Complaint.

**D.     Count II—Violation of Equal Protection Rights under the Fourteenth Amendment.**

Defendants next seek dismissal of Count II, which alleges that Defendants violated Plaintiff's right to equal protection under the law provided by the Fourteenth Amendment. (ECF 43 at 14–15.)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. The Equal Protection "Clause 'does not take from the States all power of classification,'" *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (quoting *Pers. Admin. of Mass. v. Feeney*, 442 U.S. 256, 271 (1979)), "but 'keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike,'" *id.* (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has

been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Id.* "Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (citations omitted).

The Court does not have to address the appropriate level of scrutiny here, as the first requirement is clearly lacking. Count II does not cite any specific instances of disparate treatment, instead stating that "the allegations contained herein demonstrate that the Plaintiff was treated differently and incongruently to other inmates who were not homosexual." (ECF 37 ¶ 36.) However, the First Amended Complaint includes virtually no specific allegations as to how any specific treatment Plaintiff received due to his sexual orientation differed from that of other prisoners.

Plaintiff does allege that he was "officially charged with a disciplinary violation for fighting" following the April 25, 2012 attack, that Defendant Greenwood convicted Plaintiff of this charge, and that charging both parties to the fight "is inconsistent with the policy of the West Virginia Division Corrections." (*Id.* at 15–16.) However, Plaintiff fails to allege that this purported disparate treatment by Defendant Greenwood was different than that received by other similarly situated prisoners, or that Defendant Greenwood convicted Plaintiff because of "intentional or purposeful discrimination" due to Plaintiff's sexual orientation.

Absent an allegation of disparate treatment arising out of "intentional or purposeful discrimination," Plaintiff's equal protection claim cannot succeed. *See Morrison*, 239 F.3d at 654. Accordingly, the Court **GRANTS** the Motion to Dismiss as to Count II of the First Amended Complaint.

13

**E.**     **Count III—Violation of Due Process Rights under the Fourteenth Amendment.**

Defendants argue the Court should dismiss Count III of the First Amended Complaint, which alleges that Defendants denied Plaintiff's "constitutional rights to procedural and substantive due process" under the Fourteenth Amendment. (ECF 37 ¶ 40.)[4]

"A § 1983 action may be brought for a violation of procedural due process . . . ." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Id.* (citations omitted); *see also Carey v. Piphus*, 435 U.S. 247, 261 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."). "Where the deprivation of a protected interest is substantively justified but procedures are deficient in some respect, there may well be those who suffer no distress over the procedural irregularities." *Carey*, 435 U.S. at 263. "Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure." *Id.*

---

[4] "[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater *substantive* protection 'than does the Cruel and Unusual Punishments Clause.'" *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). "Accordingly, [a defendant's] substantive Due Process claim adds nothing to his Eighth Amendment Claim." *Id.* As the Court addressed Plaintiff's Eighth Amendment claim above, it will not also discuss Plaintiff's "substantive due process" claim here. *See Radford v. Hammons*, Civil Action No. 2:14–24854, 2015 WL 738062, at *5 (S.D. W. Va. Feb. 20, 2015) (analyzing the plaintiff's Eighth Amendment claim, but declining to separately discuss the "substantive due process" claim).

Additionally, Plaintiff asserts claims against only state officials, not federal actors. As such, while Count III references a claim under the Fifth Amendment, Plaintiff's "relevant due process protections are found in the Fourteenth, rather than the Fifth, Amendment." *Massey v. Ojaniit*, 759 F.3d 343, 354 n.5 (4th Cir. 2014) (citing *United States v. Hornsby*, 666 F.3d 296, 310 (4th Cir. 2012)).

14

"To succeed on [a procedural] due process claim, [a plaintiff] must show that he was denied a liberty interest protected by the Due Process Clause *and* that the process employed by the state prison was constitutionally inadequate." *Denkenberger v. Ballard*, Civil Action No. 2:11–cv–00466, 2012 WL 529894, at *3 (S.D. W. Va. Feb. 17, 2012) (citing *Lovelace v. Lee*, 472 F.3d 174, 202 (4th Cir. 2006)); *see also Wilkinson v. Austin*, 545 U.S. 209, 221–28 (2005) (discussing the procedural due process analysis).

Under the "liberty interest" analysis, while "prisoners do not shed all constitutional rights at the prison gate . . . , 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)); *see also Kitchen v. Upshaw*, 286 F.3d 179, 185 (4th Cir. 2002) ("[W]hen a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of his sentence.") (citation omitted); *Jones*, 433 U.S. at 125 ("The fact of confinement and the needs of the penal institution impose limitations on constitutional rights . . . ."). Not every "state action taken for a punitive reason encroaches on a liberty interest" of a prisoner "under the Due Process Clause even in the absence of any state regulation." *Sandin*, 515 U.S. at 484. Indeed, the punishment of incarcerated prisoners "effectuates prison management and prisoner rehabilitative goals." *Id.* at 485. "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

In *Sandin v. Conner*, the Supreme Court elaborated that:

States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected

15

manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 483–84. "After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223.

Plaintiff alleges that Defendants denied his procedural due process rights in two ways. Plaintiff first alleges Defendants violated these rights "when he was wrongfully charged and convicted for the disciplinary violation of fighting and sentenced to punitive segregation at MOCC." (ECF 37 ¶ 40.) Plaintiff states that Defendant Greenwood convicted Plaintiff of a disciplinary violation for fighting following the April 25, 2012 incident and "assigned [him to] fifteen days of punitive segregation." (*Id.* ¶ 15.) Plaintiff does not, however, allege that this sentence of segregation exceeded the sentence imposed by the court.

As such, the issue is whether Plaintiff's fifteen-day sentence of segregation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485–86) ("In order to determine whether the inmates possessed a liberty interest, we must compare the conditions to which they were exposed in administrative segregation with those they could expect to experience as an ordinary incident of prison life."). In *Sandin*, the Supreme Court "found no liberty interest protecting against a 30-day assignment to segregated confinement because it did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 485). Here,

16

Plaintiff was assigned to segregation for substantially less time than the prisoner in *Sandin*. (*See* ECF 37 at 3 (noting that "Plaintiff was assigned fifteen days of punitive segregation").) Additionally, Plaintiff provides no allegations that, other than being segregated from the general population, the conditions of the segregation area differed than those of the general population area. *Cf. Beverati*, 120 F.3d at 503–04 (addressing allegations that the conditions in administrative confinement were "more onerous than those specified in the prison regulations"). Plaintiff thus fails to state a claim that his sentence of segregation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. The Court therefore finds that Plaintiff did not have a liberty interest protecting against the fifteen-day sentence of punitive confinement.

Plaintiff also alleges that Defendants denied his procedural due process rights "by the woefully inadequate and unreasonable responses to his attempts to obtain relief and protection by way of the administrative procedures of the WVDOC and MOCC." (ECF 37 ¶ 40.) In addition to the proceeding related to the disciplinary violation for fighting, Plaintiff also provides allegations that describe two administrative procedures: (1) the investigation of the April 25, 2012 incident by Defendant Frame, (*id.* ¶ 18); and (2) Plaintiff's attempts to secure a transfer to another facility, (*id.* ¶¶ 19–23). As to the investigation, Plaintiff fails to make any allegation that the findings of this investigation resulted in any actual harm or his exposure to conditions outside those he could expect to experience as an ordinary incident of prison life. As such, Plaintiff has no protected liberty interest relating to this investigation. *See Beverati*, 120 F.3d at 503.

Regarding Plaintiff's efforts to seek a transfer, the only conditions Plaintiff alleges are "the ongoing threat to his life and safety," that he was in "imminent danger," and that, during this time,

17

an inmate "bumped into" him at "the pill line" and said "What's the matter sissy, no bodyguard?" (*See* ECF 37 ¶¶ 19–23.) Additionally, Plaintiff fails to note when he was transferred, or how long he sought transfer to no avail. (*See* ECF 37 ¶¶ 11, 15, 19–20, 22–23 (noting that Plaintiff sought a transfer after the April 25, 2012 attack, was transferred following the May 29, 2012 bumping encounter, and was assigned to "fifteen days of punitive segregation" in between the two incidents).) Absent some substantial additional showing that Plaintiff was exposed to conditions outside "those they could expect to experience as an ordinary incident of prison life," this allegation is similarly insufficient to find that Defendants deprived Plaintiff of a protected liberty interest. *See Beverati*, 120 F.3d at 503 (citing *Sandin*, 515 U.S. at 485–86).

As the Court finds that Plaintiff fails to state a claim that Defendants denied him a protected liberty interest, it foregoes an analysis as to whether "the process employed by the state prison was constitutionally inadequate." *See Denkenberger*, 2012 WL 529894, at *3 (citing *Lovelace*, 472 F.3d at 202). Accordingly, the Court **GRANTS** the Motion to Dismiss as to Count III of the First Amended Complaint.

## F.    Count IV—Negligence in Supervision and Training of Officers.

Count IV alleges that Defendants Rubenstein and Ballard owed a duty of care "in the supervision and training of correctional officers and other officials at MOCC," they breached this duty, and this breach "directly and/or proximately" caused the "deprivation of [Plaintiff's] clearly-established constitutional and other legal rights." (ECF 37 ¶¶ 44–45.) Defendants argue the Court should dismiss Count IV, as Defendants Rubenstein and Ballard are entitled to qualified immunity.[5] (ECF 43 at 17–20.)

---

[5] The Motion to Dismiss is not clear as to whether qualified immunity bars all of Plaintiff's claims against these two

18

Plaintiff's duty of care claim sounds in West Virginia state law pertaining to negligent acts or omissions. (*See* ECF 37 ¶¶ 43–47.) In *State v. Chase Securities, Inc.*, the Supreme Court of Appeals of West Virginia stated that "[i]t is obvious that an immunity standard for a public official needs to encompass all types of public official liability, not just the range of cases covered by Section 1983 suits." 188 W. Va. 356, 364 (1992). The Supreme Court of Appeals of West Virginia subsequently provided the following analysis for when a plaintiff brings a negligence claim against a government official:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29–12A–, *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

*Hess v. W. Va. Div. of Corr.*, 227 W. Va. 15, 18–19 (2010) (quoting *Clark v. Dunn*, 195 W. Va. 272, 274 (1995)). "Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Robinson v. Pack*, 223 W. Va. 828, 829 (2009) (quoting *Bennett v. Coffman*, 178 W. Va. 500 (1987)). However, "[t]here is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive." *Hess*, 227 W. Va. at 19 (quoting *Chase Sec.*, 188 W. Va. at 356–57).

"[I]n analyzing whether qualified immunity bars [a] negligence [claim], the first

---

Defendants, (*see* ECF 43 at 19–20 ("[T]he defendants, as employees of a state agency, should be afforded the protections of qualified immunity for the claims contained in the Complaint.")), or only Count IV, which is directed specifically against Defendants Rubenstein and Ballard, (*id.* at 17–19 (providing a legal discussion that only addresses qualified immunity in the context of negligence claims); *id.* at 20 ("[D]efendants, James Rubenstein and David Ballard, are entitled to qualified immunity for the claim that they were negligent in the supervision and training of correctional officers and other officials at MOCC.")). As Count IV is the only remaining claim, the Court will address Defendants' arguments specifically pertaining to this negligence claim.

determination that must be made is whether the relevant insurance policy waives the defense of qualified immunity." *Id.* at 20 (citing *Parkulo v. W. Va. Bd. of Prob. & Parole*, 199 W. Va. 161, 163–64 (1996)); *see also Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*, Civil Action No. 3:06-1032, 2008 WL 313957, at *8–9 (S.D. W. Va. Feb. 4, 2008) (discussing qualified immunity barring a state negligence claim under West Virginia state law and first addressing whether the relevant liability insurance policy waived this defense). "[I]f the court finds that the applicable insurance policy affords coverage with respect to the claims raised . . . by expressly waiving [qualified] immunity . . . , the court should allow the civil action to proceed to such result as may otherwise be proper under the law and as is contemplated under the terms of the policy, but only to the extent the policy extends coverage." *Parkulo*, 199 W. Va. at 180.

Defendants argue that Defendants Rubenstein and Ballard have qualified immunity that bars Count IV's negligent supervision and training claim. (ECF 43 at 17–20.) However, Defendants fail to provide the relevant insurance policy or other evidence that permits the Court to determine whether the policy waives these Defendants' qualified immunity. Absent such evidence, Defendants' argument fails. *See, e.g. Parkulo*, 199 W. Va. at 180 (remanding the case for a determination as to the applicability of the insurance policy).

Accordingly, the Court **DENIES** the Motion to Dismiss as to Count IV of the First Amended Complaint.

## IV.    Conclusion

For the reasons discussed above, the Court **GRANTS** the Motion to Dismiss as to Defendants Perry and Kincaid and Counts I, II, and III of the First Amended Complaint, and **DENIES** the Motion to Dismiss as to Count IV and the failure to effectuate service argument

20

under Federal Rule of Civil Procedure 12(b)(5). There are no surviving claims against Defendants Hall, Kincaid, Greenwood, Frame, and Perry, so these Defendants are **DISMISSED** from this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 19, 2015

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE